application note but the guidelines section itself doesn't speak to Scienter. In terms of in ailing smuggling cases under 2L1.1 when a death occurs and that particular enhancement under B5 I believe it is doesn't speak to intent and the courts have held that there is intent. It's no more than it's required to cause the dangerous conditions but there is that intent that is required. And so I think that you know the government's response is that well in 2B.3.1 under the robbery guideline that defendants are routinely found liable for regardless of intent or additional harm created by the offense but if you look at that section in the case that is cited for that, the Hart case, it actually says that that's the circumstance where a defendant actually intended to have a something that's not a weapon appear to be a weapon. And the Hart case actually cites a Ninth Circuit case, Taylor, where the court held that yes he did get the increase for the dangerous weapon because he intentionally created the appearance that he possessed a dangerous weapon and so I don't think that the cite to 3B.1, excuse me, 2B.3.1 supports the government's position at all. In fact, I think it's the opposite that shows that there is some intent requirement. And so you know I think that the courts haven't, the Ninth Circuit hasn't looked at either the guideline in question now or the one that the Outer Circuit on 2G.2.2.1. But the case is on B.1. There is no intent requirement under that guideline section and it reads very similarly to the increase for sadistic or masochistic conduct and I think the reason behind it is sound. That it's an additional harm and there has to be some showing that the court has to, to receive that type of material or send that type of material in order to be subject to a substantial increase. Could you address, or are you familiar with our circuit decisions in the United States v. Lavender and United States v. Gonzales where we, in the latter case in particular, declined to re-scienter into 3B.1.4? I'm not familiar with that, but 3B.1.4 I believe I have to reserve that in my rebuttal to get a chance to look. I don't, I'm not familiar with those cases off the top of my head. It's counterfeiting and has, basically what we said is that we have recently clarified that sentencing factors are not separate criminal offenses and as such are not normally required to carry their own mens rea requirements. We declined Gonzales' invitation to re-scienter requirement into section 3B.1.4 because the individual is under 18 of age for the enhancement to apply. Well, I think that, you know, one major difference in a case like this where it's really about images being sent over the internet, that it's reasonable to have some state of mind requirement for the reasons set forth in the other cases of the possibility that people can have possession of a particular image or a circumstance to them without knowing the specific content of the images. And so I think that this is a somewhat unusual circumstance where it's about images that are, you know, a series of ones and zeros and it's not an actual physical object. And so that there is a good policy reason to require some more mental state, especially when a defendant could be subject to having this material sent to them by the government itself. I know that's not the case here, but I think that it would set a rule that if it is strict liability for this type of offense, the same as if it was strict liability for having any image under the age of 12, that it would create an incentive for the government to send the material out and get substantial increases on a defendant's sentence without any, you know, further mens rea on part of the defendant. If I could turn briefly to the evidence of knowledge in this case, or lack thereof, in the government's letter brief, they make some assertions that really the record just doesn't bear out. For example, the record says that the defendant was on the phone and via computer revealing his interest in engaging in sexual intercourse with young children. The record sites don't, all the record sites that are given for that, there's no support for that at all. And in fact, didn't he brag about that he was having relations with a cool girl, 14 years old, across the street from his house? Yeah, well, I think that's part of what the issue is, is that... time and again that he was interested in teenage depictions. And, you know, what the government is using now for the sentence enhancement is images of prepubescent minors. And so... Well, didn't he have all these floppy disks, about 15 floppy disks, containing this material? This material was found on the floppy disk. One image was on... That was found in his house? Yes. Near his computer? Yes. Okay. But the point that I'm trying to make is that... Yes, sir? That the defendant articulated an interest in teenage material. He said that he was interested in ages 12 to 17. He talked about... And didn't the judge say that when she looked at this material and then proceeded to the enhancement, she precluded that these children were prepubescent? Did she say that by looking at them? So they didn't have the implements that people have who have matured? Right. She said that they were prepubescent. Right. In the images. What I'm saying is that the record shows that the defendant was seeking material of teenagers, and that his interest was primarily in teenagers. But he had the other material. He had quite a bit of it. Because I think the judge described that in her discussion of this matter. He did have a number of that material on the hard drive and the disc. But our argument is that there's not simply any evidence that he was seeking that particular type of subgroup of images. How did he get possession of it then? If he wasn't seeking it, how did he get possession of it? Well, I think that there was evidence that there were hundreds of images that were transferred back and forth. Yeah, and he held it as possession. Correct. Right? Right. But it's the same as that other case where the defendant has possession of sexually explicit material involving a minor, but didn't have the intent that it depicted somebody under 12. But he still owned it. He didn't get rid of it, did he? If he didn't want it, he could have just thrown it away. But it was found in his possession. Correct. Can't we assume that he had some intent to keep this or keep it in possession? If you get something you don't want, you throw it away. But he had quite a bit of it. And the judge then went on and described what the images were and who these young women were and so on and so forth, that they were prepossessed children. But that was a small – this material invokes potentially the increase as a small subset of all the images. And so I'm not sure that it's fair on the record that there is to say that he even viewed all the images. And I guess that in the computer world, it's a little hard to throw things away, isn't it? Right. I mean, one of the images the government relied on is in a subdirectory called deleted. And so there wasn't a really good record on how that was obtained or whether that actually had already been deleted but still on the hard drive because you could delete things out of your hard drive and it wouldn't be a good record. Mr. Slane, by my clock, you're down to about five minutes. Is that right, Lucy? It looks like about 2.40 here. Okay. May I reserve that? Sure. Thank you. Mr. Chang? Good morning and good afternoon. This is Richard Chang. I'm an assistant United States attorney here in San Diego. I was the trial counsel during the trial of Mr. Cook as well as the privilege of arguing before this panel in Mr. Cook's previous appeals. Mr. Chang, can you give me an example of a description of a display, computer photo or whatever that, A, would constitute child pornography but, B, would not be sadistic? Well, let me first state that if the question is asking for an example of that in what we've charged, I would probably say no because we probably, the government wouldn't charge those images. We would be looking for, honestly, the images that were the worst of the images that were either transmitted or possessed by Mr. Cook. I'm asking a hypothetical question. Yes. Can I finish? Yes. Keeping Reardon in mind, can you give me an example of something that would, A, be child pornography but, B, not be sadistic? Yes. And keeping Reardon in mind as well as all the other cases in all the other districts, a child that is fully naked exposing their genitals, nothing inserted, no adult nearby, those have been ruled to be child pornography. Certainly there are some districts that have considered and possibly even the government may consider those to be a different set of child pornography. For instance, what they've called child erotica. Let's suppose they are. There's an adult male close by. There's no penetration. In this case, the reason it becomes sadistic is because Reardon says that penetration by an adult is, if so facto, sadistic. If you eliminate that and you simply had images of the child, for example, sitting on a man's stomach or where there's no penetration, then, A, you presumably would still be charging them for possession of or receipt of pornography, child pornography, right? Right. And the key definition or part of the definition is sexually explicit conduct. The Volk case is somewhat of an example of that out of the Eighth Circuit. And just so we all have the site, it's 337 F. 3rd 997. In that instance, there are no discussion of images which involve penetration or insertion in a child's genital. What that shows, however, are a series of images in which the child is either held by the neck with a leather collar, held very closely to an adult male. All those images are not only, I guess, prescribed to be child pornography, but also sadistic. So, certainly, that's another example of child pornography. That is sadistic. That does not have to show insertion. Time out. Time out. I interjected because I wasn't hearing an answer to Judge Hawkins' question, and I'm still not, but it's his question, so I'd still like to know, as I thought Judge Hawkins was asking, is there a category of child pornography which is not sadistic, which would, therefore, in combination be downloaded, where some would be sadistic and some would not? Yes. The quick answer is those images that do not show insertion but show sexually explicit conduct, a child that is fully naked, for instance, with her legs displayed and spread open, yes, that is child pornography. That may not be sadistic because there's no showing of penetration or insertion. Right. So that's the quick answer, but let me also try to at least give the panel, as well as Mr. Swain, a sense of the proof that we've shown at trial. Judge Hawkins, I didn't know where you were going with that question, but I have the same line of inquiry. Did you have more that you wanted to do? No, I understand the government's response. All right. Well, then, can I ask, before you get to what you proved, just so to take the hypothetical, how does someone ordering or receiving a mixed batch like that know that they are, in fact, getting sadistic, what would be considered sadistic, along with the non-sadistic? Well, the assumption, first off, I think may be just that, an assumption. If you are ordering something, you're not ordering a mixed bag. Most of these individuals, Mr. Cook, for instance, knew what he was getting into because he went to specific chat rooms that had a specific, I guess, a specific genre that those individuals that participated in that chat room liked or was essentially interested in. Certainly, this particular chat room that the undercover agent found Mr. Cook in was not only dealing with children, but a children of a particular age. Quite frankly, the real quick answer is that once you deal with child pornography, you run the risk of getting a lot of images. The problem here with Mr. Cook is that not only did he get those images and kept them in his hard drive in separate floppy disks, he also transmitted those. And that's the problem here because that shows not only did he get it, he looked at it, he knew what it was of, he kept it, and then he transmitted those items out. And here's an example of that. Look at one of the instant messaging logs that was admitted into evidence before the jury. And the undercover agent says, I should set this up a little better. The undercover agent receives at least one moving picture file, an AVI, an MPEG, that was sent over to him by Mr. Cook. Online, at the very moment that the undercover agent receives it, the undercover agent looks at it and responds in an instant message to Mr. Cook. He says, what, expletive, where did you get this stuff? Mr. Cook says, from the room. Undercover agent says, expletive, which room? This is awesome. Mr. Cook says, right now I'm in a VVVY, which is very, very, very young. Undercover agent says, and you got it from there? Cook says, yes. Undercover agent says, man, that looks real. How old do you think she is? Cook responds, about 10. So that confirms what? It confirms that he sent it. It confirms that he's looked at it before he sent it. And it confirms that he knows what he sent is a child that is being anally penetrated that is 10 years old, or at least in his mind 10 years old. Could you give us the site for what you just said? Yes, I'm sorry, Your Honor. That is in government exhibit number 11. It is on page, I don't think it's actually numbered within 11, but it's on the last page of government 11 that was admitted into evidence on page 277 of the record transcript of the trial. Mr. Ching, this is Judge Hawkins again. It sounds like the government's position, correct me if I'm wrong, I don't want to put words in your mouth, but it sounds like your position is even if there were a scienter requirement, you met it in this case. That is exactly our position, and that's what we've indicated in our letter brief. Let me just indicate that. I have a follow-up to that. If that's the government's position, do we need to reach the issue? I think for the purposes of this case, you probably don't. However, you know, Reardon sidestepped that. A number of other cases out of this district have sidestepped that. I think if there is an inquiry that is made, it should be an inquiry that Mr. Swain has made. Does the Ninth Circuit want to clarify its position relative to Reardon regarding whether there is a scienter requirement at least for this specific sentencing adjustment or sentencing enhancement? And the response I urge this Court is to say, no, you don't need that type of scienter requirement. The government does not need to show that. The very minimum that the government needs to show in terms of amends rea is based at the core offense itself. That the government needs to prove that the defendant knew that he had child pornography and was sending out child pornography. But once you go down that road and venture into this kind of area of illegality, you run the risk of not only obtaining, possessing, but also sending out child pornography that will also be deemed sadistic. Mr. Swain or Mr. Cook's counsel indicates, well, look at a particular section like 3A, I think he indicated 3A 1.1 and 1.2. And he says that when a victim is vulnerable or a victim is an official victim, like a police officer or government employee, the sentencing guideline as well as case law requires that the government prove that they knew that the person or defendant knew that the person was vulnerable or was an official government employee. The problem with that example that he wrote in his letter brief is that in 3A 1.1 and 3A 1.2, that scienter requirement of knowledge is written directly into the guideline itself. When it says, if the defendant knew or should have known that the victim of the offense was a vulnerable victim, or if the offense of conviction was motivated by such status increased by three levels, those are examples again and again in which the sentencing guideline makes a difference or causes us to understand the difference between scienter that is read in directly to be required within the sentencing enhancement and those like, for instance, what we're talking about here under 2G 2.2 for sadistic, upward adjustment for sadistic images, that do not specify that. And to say that Lavender and Gonzales, which the Court mentioned before, doesn't actually even hold that, I think really begs the question. It really is very applicable. Would you agree, were we to say that intent was not required, would you agree with the Seventh Circuit Judge Posner's dictum, if not holding, that sentencing entrapment would be an exception to that? In other words, the concern that was raised by Mr. Swain, that the government would basically deliberately send images that included sadistic images, even where there was no other evidence, chat room source or whatever? I wholly agree with that. I think if there was a case in which the government's only evidence that the person was possessing and possibly even possessing with the intent to transmit those images were images that we sent in an undercover operation that was only sadistic images, I don't think it would be appropriate for the government or the Court, for that matter, to apply that type of upward adjustment, because it is purely sentencing entrapment. But in those instances, however, in which there are added discussions, between the undercover agent and the suspect, indicating that that's what he wants, that's what he has, that's what he's into specifically, then I think that adjustment should lie. What about the other aspect of Judge Posner's opinion where he said that if the defendant made, I think he said, heroic efforts to avoid getting anything other than the kind of normal child pornography you said in answer to Judge Hawkins' question might exist. Would that, I think Judge Posner said, the relief there would be a downward departure, notwithstanding the four-level enhancement. Is that a feasible regime? I think that's very feasible in a number of ways. If a person goes to heroic efforts, and in that particular case, not only did he indicate to everyone that we knew about that he was only looking for a specific type of image, he only ventured into particular areas or websites or chat rooms looking for those images. And in fact, as I understand it, there was evidence in which after he gets images that clearly wasn't what he was looking for and clearly something that qualified as heroic measures, he deleted them, got them out of them, and certainly never transmitted them away again. This is in that particular case. Certainly there is at least one image that came off the deleted file. That doesn't mean that he took heroic efforts in this case at all. In fact, look at what he did. After he gets it, specific images I should say, he transmits it out after redoing what those are, and he has the added step of keeping it. Mr. Cook did not take any aggressive or heroic measures to save himself from that. Now, what is interesting about, I think, this argument that I hope is not lost on the panel is that the one argument that has not been discussed here is that, well, you know, all child pornography, if you define child pornography as required insertion or vaginal insertion or anal insertion, all child pornography is sadistic. Well, you know, first off, the government doesn't agree with that, and certainly the district court didn't agree with that when we presented one picture clearly showing, I think, in even the court's mind that it was sadistic because the male had ejaculated all over the prepubescent, I think, body and his face, her face. Not all child pornography requires insertion or penetration of the like that Mr. Swain is talking about. Yet, however, this is exactly the type of images that is time and time again shown to us by Mr. Cook that he wants, that he wants to possess, and that he wants to trade. By my clock, you're out of time. Thank you, Your Honor. Mr. Swain? Yes, thank you. The government keeps saying that there's all this evidence that he wants this type of material, but the conversations he has says that he wants teenage material. He never says, I want sadistic material. I'm looking for sadistic material. And, you know, now the government comes up with some other claim about a moving file. Now, the district court relied on four images, none of which there's any evidence were sent. The government now is claiming that these images that show slight penetration were sent out. There's no evidence of that. One of them was found on a deleted file, and the other three were on a disk. That wasn't before the district court, and the government, you know, reading from Exhibit 11, that wasn't relied on by the district court in finding that. I haven't – I mean, I don't doubt Mr. Chang's – Well, wait a minute. That's because, if I recall, intent was not raised in the district court, was it? Well, actually – So why would there be – the issue was whether or not they were sadistic, not whether or not he intended to possess them. Well, actually, at the very beginning of the hearing, at the last sentencing hearing, I did – I mean, in my written papers, I objected to knowing possession of these 15 images the government was relying on. And then at the hearing itself, at the beginning of the hearing, I said that we object that there's a lack of showing of knowing possession of these 15 images. That's at page 6 of the March 26, 2003 hearing. So there were objections on a variety of foundational bases on knowing possession. And so we did make all those objections. And now the government is saying that there's a moving picture that wasn't relied on by the district court. It was these four images.  And certainly the record sites the government gives in its brief has nothing to do with showing that these particular images were possessed with an intent or knowledge that they involved sadistic material. And, of course, these are the ones that involve slight penetration, which are, as has been our position in the brief, that that's not sufficient to invoke the sadistic upward adjustment. And so, you know, if there is a science requirement, at a minimum it has to be remanded because these four images have not been shown to have been traded. They weren't shown to have been received with any particular knowledge or intent that they involved sadistic. And to the contrary, you know, at the supplemental record 57, the defendant tells the agent he's looking for 12 to 17. He says that he's interested in teenage girls. At 125 to 126, he says it again. He never says, I'm looking for sadistic material. Any further questions from any members of the panel? No, sir. Thank you. Both counsel for their arguments. They're very helpful. These are difficult cases for everyone involved. The case just argued will be submitted for a decision, and the court stands adjourned. Thank you, Your Honor. Thank you all. Thank you. Thank you very much.
judges: Hawkins, Fisher, Weiner